UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| MASSACHUSETTS INSTITUTE OF TECHNOLOGY,<br><br>    Plaintiff,<br><br>        v.<br><br>MICRON TECHNOLOGY, INC.;<br>APPLE, INC.; ELPIDA MEMORY, INC.;<br>MICRON MEMORY JAPAN, INC.; and<br>ELPIDA MEMORY USA, INC.,<br><br>    Defendants. | Civil Action No.<br>15-10374-FDS |

**MEMORANDUM AND ORDER ON DEFENDANTS'
MOTION FOR ATTORNEYS' FEES UNDER 35 U.S.C. § 285**

**SAYLOR, J.**

This is a motion for attorneys' fees, arising out of a patent infringement action concerning fuses in integrated circuits. In February 2015, after spending seven years negotiating a licensing agreement, plaintiff Massachusetts Institute of Technology filed suit against defendants Micron Technology, Inc.; Elpida Memory, Inc.; Micron Memory Japan, Inc.; and Elpida Memory USA, Inc.[1] The complaint alleged that defendants' laser-fuse technology infringed on MIT's U.S. Patent No. 6,057,221 ("the '221 patent").

Shortly after MIT filed suit, defendants petitioned the Patent Trial and Appeal Board ("PTAB") for *inter partes* review ("IPR"), seeking a declaration that the '221 patent was invalid. Defendants contended that the '221 patent was invalid because prior art in a Japanese patent application anticipated the patent and rendered it obvious. In November 2015, the PTAB granted

---

[1] MIT also filed suit against Apple, Inc. Apple, however, has not moved for attorneys' fees.

defendants' petition to review the validity of the '221 patent.  Because the PTAB usually invalidates patents after instituting full IPR review, MIT requested that the Court enter an adverse judgment and dismiss the case.

Defendants did not assent to dismissal.  Instead, they have moved for attorneys' fees and costs pursuant to 35 U.S.C. § 285.  Defendants contend that this case is exceptional because MIT asserted unreasonable infringement and validity arguments and engaged in vexatious litigation conduct.  Among other things, defendants allege that MIT and the lead inventor, Dr. Joseph Bernstein, intentionally misled the United States Patent and Trademark Office ("PTO").

Under § 285, district courts have the authority to award attorney's fees and costs in "exceptional" cases.  For the reasons set forth below, this case does not rise to the level of an "exceptional" case warranting the imposition of attorneys' fees.  It appears that MIT pressed not-unreasonable infringement positions, rebutted defendants' invalidity challenges with legitimate—but ultimately unmeritorious—arguments, and conducted the litigation in a good faith manner.  Accordingly, defendants' motion for attorneys' fees and costs will be denied.

**I.     Background**

The technology at issue involves fuses in integrated circuits.  In integrated circuits, each fuse has a cut-link pad on a substrate that is electrically connected to two conductive lines.  A laser in the circuit can instantly disconnect the cut-link pad, creating an open circuit and blowing the fuse.

In May 2000, the '221 patent was issued to lead inventor Dr. Joseph Bernstein, who conceived of the invention while pursuing his Ph.D. at MIT.  Bernstein and his co-inventor assigned the patent to MIT and another university.  Fuse technology was well-established in integrated circuitry when Bernstein applied for the patent.  However, the '221 patent included

two important limitations. First, it claimed a cut-link pad that was at least ten percent wider than the connecting electrical lines. Second, it claimed a cut-link pad that was substantially less thermally resistant than the connecting lines.

In May 2008, MIT contacted Elpida, a Japanese manufacturer of dynamic random-access memory products that rely on integrated circuits, and notified the company that it needed a license for the '221 patent. In support of its assertions, MIT sent Elpida a copy of the '221 patent and drawings demonstrating alleged infringement by one of Elpida's products.

Over the next two years, MIT and Elpida exchanged correspondence and met multiple times to discuss the validity of the patent and MIT's infringement assertion. Elpida contended that the patent was not valid because a Japanese patent application by Koyou anticipated it or rendered it obvious. Specifically, Elpida contended that Koyou disclosed a cut-link pad that was substantially wider and less thermally resistant than the connecting electrical lines. As to MIT's infringement assertion, Elpida contended that its accused product lacked electrically-conductive lines "on a substrate," as required by the '221 patent claims, because the lines in its product passed vertically into and through the substrate.

In March 2011, negotiations between the parties broke down. MIT, without notifying Elpida, requested that the PTO reexamine the validity of the '221 patent. With its reexamination petition, MIT provided the PTO with all of the prior art that Elpida had identified during their negotiations, including Koyou. MIT also submitted written reasons why it believed the patent was novel and non-obvious despite Koyou—the same arguments that it provided to Elpida during the parties' negotiations.

Three examiners from the PTO's Central Reexamination Unit initially rejected all of the claims of the '221 patent as unpatentable over Koyou. In response, MIT submitted an inventor

declaration, in which Bernstein explained his reasoning in support of the conclusion that a person having ordinary skill in the art would not read Koyou as (1) affirmatively disclosing a cut-link pad having a width at least ten percent greater than the width of each connecting electrical line, and (2) suggesting a cut-link pad having substantially less thermal resistance than the lines. Agreeing with Bernstein's conclusions, the PTO issued a notice of intent to issue an *ex parte* reexamination certificate for the patent.

After the reexamination, MIT reengaged Elpida in negotiations. Although Elpida contended that MIT had misrepresented Koyou to the PTO, the parties nearly reached a settlement. MIT lowered its settlement demand to $500,000, at least in part, because Elpida was in bankruptcy and planned to eliminate laser fuses from its product line. Although the parties reached a settlement agreement in principle, they failed to finalize an agreement because of a disagreement over the scope of the license.

In February 2015, after seven years of negotiations, MIT filed suit against defendants for patent infringement. In May 2015, defendants filed a petition with the PTAB seeking IPR of the '221 patent, and this Court stayed the case pending resolution of that petition. In support of their petition, defendants submitted an expert declaration from a litigation consultant who disagreed with Bernstein's conclusions as to how a person having ordinary skill in the art would read Koyou.

In November 2015, the PTAB granted IPR review of the '221 patent. In light of the probability that the PTAB would invalidate its patent, MIT requested that the Court grant an adverse judgment and dismiss the case.[2] Defendants objected to dismissal, and moved for attorneys' fees pursuant to 35 U.S.C. § 285.

---

[2] According to MIT, the PTAB invalidates roughly 75 percent of all patents that proceed to a final IPR decision.

## II.  Analysis

Pursuant to 35 U.S.C. § 285, defendants have moved for attorneys' fees and costs incurred in defending against MIT's patent infringement claims. Under § 285, district courts have the discretion to award attorneys' fees and costs to a prevailing party in "exceptional cases." 35 U.S.C. § 285.

In *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, the Supreme Court provided guidance on this fee-shifting provision:

> An "exceptional" case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated. District courts may determine whether a case is "exceptional" in the case-by-case exercise of their discretion, considering the totality of the circumstances.

–– U.S. ––, 134 S. Ct. 1749, 1754 (2014). The Supreme Court noted a non-exclusive list of factors that a district court may consider in evaluating whether a case is exceptional, including "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Id.* at 1756 n.6. The Federal Circuit has also considered whether a plaintiff engaged in any preparation and investigation of the patent claims and a defendant's product before filing suit. *See, e.g.*, *Superior Fireplace Co. v. Majestic Prods. Co.*, 270 F.3d 1358, 1378 (Fed. Cir. 2001).

Defendants contend that this case is "exceptional" for two principal reasons. First, they contend that MIT's infringement and invalidity positions were objectively unreasonable. Second, they contend that MIT litigated its infringement position against defendants in a vexatious manner by, among other things, misleading the PTO about Koyou. Based on the

totality of the circumstances, defendants fall short of satisfying their burden of demonstrating that this is an exceptional case.

To begin, MIT's infringement position was not entirely unreasonable, and certainly not frivolous. Defendants contend that MIT's infringement claims were baseless "because the '221 patent claims require that the two electrically-conductive lines attached to the cut-link pad be 'on the substrate,' [but] MIT never identified lines in the accused products that were 'on' a substrate, but rather pointed to lines that passed vertically into and through the substrate." (Def. Mem. 5). Essentially, the parties' infringement dispute hinged on the meaning of the claim "on the substrate." That definition would have depended on a *Markman* determination by the Court, and MIT's contention that "on the substrate" encompassed passing "into and through" the substrate is not entirely unreasonable. Indeed, as MIT notified defendants throughout their negotiations, the Federal Circuit has found "on" to mean in a "position of contact" in other circumstances. *See Senmed, Inc. v. Richard-Allen Med. Indus., Inc.*, 888 F.2d 815, 819 (Fed. Cir. 1989). Accordingly, MIT's infringement position falls appreciably short of making this an "exceptional" case. *See, e.g.*, *Barron v. SCVNGR, Inc.*, 100 F. Supp. 3d 47, 49 (D. Mass. 2015) (denying patent infringement defendant's motion for attorneys' fees even though Court granted summary judgment before "any scheduling conference or discovery," and noting that while the outcome "bears some reflection of the substantive strength of [p]laintiff's claim, [it] does not require the conclusion that the action was *exceptionally* meritless" (emphasis in original)); *EON Corp. IP Holdings LLC v. Cisco Sys., Inc.*, 2014 WL 3726170, at *5 (N.D. Cal. July 25, 2014) (declining to award fees where plaintiff's argument, although so "stretched . . . that few patentees would pursue it," was not so meritless that no reasonable patentee would pursue it).

MIT's assertion that the '221 patent was valid—that is, not anticipated or rendered

obvious by Koyou—was also unexceptional.  There was certainly a colorable argument that the patent's increased fuse width and substantially lower thermal resistance were novel and non-obvious limitations over Koyou.  Three expert patent examiners in the PTO's Central Reexamination Unit initially rejected MIT's arguments; however, upon closer examination of Bernstein's explanations, they concluded that the patent was valid.

The PTAB's decision to review the patent's validity by granting defendants' IPR petition essentially amounts to a preliminary determination that defendants advanced a reasonable invalidity position.  However, the PTAB's preliminary conclusion that *defendants* advanced a reasonable *invalidity* argument does not make MIT's *validity* argument unreasonable.  Defendants' contention that MIT's validity argument was objectively unreasonable necessarily means that the three expert examiners who reexamined the patent with full knowledge of Koyou also reached an objectively unreasonable, borderline frivolous, conclusion.  That is, to say the least, doubtful.  MIT's validity position may have ultimately been without merit, but there is a sizeable gap between taking a losing position and taking unreasonable positions; otherwise the statute's use of the term "exceptional" is meaningless.  The relevant inquiry in deciding fee motions under § 285 focuses on the substantive strength of a party's litigating position, "not the correctness or eventual success of that position." *SFA Sys., LLC v. Newegg Inc.*, 793 F.3d 1344, 1348 (Fed. Cir. 2015); *see also Octane Fitness*, 134 S. Ct. at 1753 (noting that fee awards are not to be used "as a penalty for failure to win a patent infringement suit").  In short, it appears that MIT's validity position was not objectively unreasonable.

Finally, MIT did not litigate this case in a manner that warrants a fee award.  If MIT's behavior was exceptional at all, it was notable for its willingness to try to negotiate a license in good faith for seven years before filing suit.  *See Barron*, 100 F. Supp. 3d at 49 (finding no "fault

in plaintiff's litigation strategy" because it "investigated [defendant's] product for several months before inviting [defendant] to negotiate a license agreement to avoid litigation").

Defendants' contention that Bernstein and MIT misled the PTO about Koyou by manipulating its teachings is not supported by the record.  At its core, defendants' argument ignores the fact that MIT disclosed Koyou to the PTO and attempted to explain why it believed that a person having ordinary skill in the art would not find the '221 patent obvious in light of Koyou.  Also, the expert declaration submitted by defendants in their petition for IPR review does not allege that Bernstein and MIT misled the PTO.  Instead, it simply highlights areas where their expert *disagreed* with Bernstein about his *projection* of how a person having ordinary skill in the art would *interpret* Koyou.  In short, MIT's conduct before the PTO and throughout the litigation as a whole was not "exceptional" within the meaning of § 285.

### III.     Conclusion

For the foregoing reasons, defendants' motion for attorneys' fees and costs is DENIED.

**So Ordered.**

Dated:  June 17, 2016

/s/ F. Dennis Saylor
F. Dennis Saylor IV
United States District Judge